AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by _____ D.C.
JUN 19 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| TIMOTHY P. McCABE | ) | Case No. 13-8307-DLB |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __9/28/2012 to 4/2/2013__ in the county of __Palm Beach__ in the __Southern__ District of __Florida and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC §1343 | Fraud by wire |
| 18USC § 1344 | Fraud on a financial institution |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

JORGE A. RIVERA, SPECIAL AGENT, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6-19-2013

_____
*Judge's signature*

City and state: WEST PALM BEACH, FLORIDA

DAVE LEE BRANNON, US MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, Special Agent Jorge A. Rivera, being duly sworn, do hereby depose and state:

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I am currently assigned to the Palm Beach County Resident Agency, Miami Field Office. I have been employed in this capacity for over 23 years. I am presently assigned to investigate violations of federal law, including conspiracy to commit mail fraud, wire fraud, bank fraud and related financial crimes.

2.  I am personally involved in conducting an investigation into the criminal activities of TIMOTHY P. McCABE. The statements contained in this affidavit are based upon an investigation conducted by myself and other federal and state law enforcement agents. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included all facts known to me in this affidavit, and have only set forth the facts that I believe are necessary to establish probable cause.

3.  As set forth herein, your Affiant submits that there is probable cause to believe that, from at least as early as September 28 2012, the exact date being unknown, through on or about April 2, 2013, McCABE, an Attorney licensed to practice law in the State of Florida, took actions that directly led to wire fraud and bank fraud in violation of 18 U.S.C. §§ 1343 and 1344.

## FACTS AND CIRCUMSTANCES

4.  On April 2, 2013, an email was sent to Elizabeth Beltran, Steve Samiljan and Shane Santacroce from the email account known to be used by McCABE, that is ringstarceo@gmail.com, with the following message:

"I love each of you. You are all victims of my very bad business decisions. I have done things unknown to any of you that have have been financially devastating. I am trying to set it right over the next few days. I am to solely blame for any wrongdoing that may be discovered at the firm. I hope and pray that I may set this right within the next few days. I will contact you later this week. I believe it will be resolved. I am truly sorry for any pain that I may have caused to you or your families. If I can not set this right then I will set my affairs in order. It was never my intent to harm any of you in any way. I have done so many things and kept them secret from each of you and my wife. If I can rectify them this week so be it. If not then I alone should suffer any consequences. I can without reservation say that none of you had any idea what I was doing secretly. I assure you that it was not for personal gain. I have left my wife and children without penniless. I have ruined their lives and yours. I made people millions of dollars the past several years (they know who they are) but none for us. I am truly sorry. May have God have mercy on my sole. Please forgive me. Tim"

5. On April 4, 2013, a Palm Beach County Sheriff's Office (PBCSO) unit responded (case # 13-060136) to the business address of McCabe & Samiljan, LLC., 30 South M Street Lake Worth, Florida. The deputy met with the complainant Steven T. Samiljan at which time Samiljan reported the disappearance of his business partner TIMOTHY P. McCABE along with monies from the escrow funds held in the business' trust accounts. Samiljan provided an approximate loss figure of three million dollars.

6. On April 5, 2013, a Boca Raton Police Department (BRPD) unit responded to a suicide call (case # 2013-004721) at 20958 Pinar Trail Boca Raton, Florida. The officer met with Mrs. Donna McCabe, who reported her husband missing. Mrs. McCabe told the officer she heard from a friend of her husband's, Dave Rorabeck. Rorabeck told Mrs. McCabe that TIMOTHY McCABE had called him (Rorabeck). According to Rorabeck, McCABE said "this will be the last call you get from me" and "I didn't do the things they are going to say I did."

7. On April 15, 2013, your affiant interviewed Steven T. Samiljan as to the disappearance of McCABE and the missing escrow funds. Samiljan and McCABE have

been the principals of the McCabe & Samiljan law firm for approximately seventeen years. Samiljan indicated during the weeks leading up to McCABE's disappearance, he had been displaying signs of financial stress. Samiljan understood McCABE had borrowed money from family. Since McCABE's disappearance numerous law firm clients have reported financial losses due to business dealings with McCABE, some unrelated to the work of the McCabe & Samiljan law firm or their title company which is known as City Title.

8. Samiljan indicated one of the business ventures McCABE operated, unrelated to the real estate title work conducted at the firm, is Ringstar. Ringstar is a business that manufactures martial arts shoes. Samiljan opined McCABE might have invested some of the missing funds into Ringstar. Initially, Samiljan was a partner in the venture but when the business failed to generated income Samiljan sold his interests in Ringstar to McCABE.

9. On or about February 28, 2013, Dennis M. and Linda L. Phillips, a married couple residing in the Commonwealth of Pennsylvania and relocating to the Palm Beach County, Florida, entered into a real estate transaction to purchase property located at 229 Plymouth Road, West Palm Beach, Florida, 33405. The Phillips' provided a deposit of $39,000, towards the purchase price of $390,000. On March 1, 2013, the Phillips' instructed their financial institution, United Services Automobile Association (USAA) located in San Antonio, Texas, to wire the deposit of $39,000, to the TD Bank account of McCabe & Samiljan IOTA Trust Account, account number: XXX-XXX6358. A review of the TD Bank account statements for the McCabe & Samiljan IOTA Trust Account XXX-XXX6358 confirmed the March 1, 2013, incoming wire transfer from

3

Dennis M. Phillips in the amount of $39,000. The seller's real estate agent for the property at 229 Plymouth Road suggested using McCabe & Samiljan as the closing agent. The closing date for the completion of the purchase of the residence was scheduled for April 30, 2013. Due to McCABE's disappearance and the disappearance of the McCabe & Samiljan law firm escrow account funds, the closing never occurred.

10. During September 2012, Joseph A. Woolf, hired McCabe & Samiljan to act as the Settlement and Closing agent for refinancing his mortgage with North Star Mortgage. Woolf borrowed approximately $145,000, from Waterstone Mortgage Corporation in order to satisfy his outstanding debt of $137,062.00, with North Star Mortgage. A review of the November 2012 bank statement for the McCabe & Samiljan LLC., Suntrust Bank account titled City Title, LLC, account number: XXXXXXXXX9238, reflected a November 13, 2012 incoming wire transfer from Waterstone Mortgage Corporation in the amount of $141,025.19.

On or about November 14, 2012, a check was issued from the McCabe & Samiljan LLC., Suntrust bank account number: XXXXXXXXX9238 payable to Chase in the amount of $137,062.00. The memo line listed "Payoff of the first mortgage loan – 4264." JP Morgan Chase Bank N.A., ("Chase") purchased the loan from North Star Mortgage.

On November 14, 2012, TIMOTHY McCABE diverted the $137,062.00, payment from the intended recipient, Chase 3415 Vision Drive, Columbus, Ohio, by causing the deposit of the check into the McCabe & Samiljan LLC., IOTA Trust Account at TD Bank (account number: XXX-XXX6358.) McCABE then proceeded to utilize the diverted funds for purposes other than to pay off the Woolf mortgage.

4

McCABE executed the following transactions from the TD bank account XXX-XXX6358 utilizing the $137,062.00: On November 16, 2012, McCABE caused the execution of a wire transfer of $50,000 to F.J. On November 19, 2012, McCABE wrote a check to himself for $10,000 and a check to Ringstar for $11,000. In January 2013, Woolf received correspondence from the first mortgage company as though the company was still servicing the loan. Woolf contacted Elizabeth Beltran the paralegal at McCabe & Samiljan and told her about the letter from the first mortgage company. Beltran told Woolf not to be concerned they would look into the matter. In March 2013, the matter had not been resolved so Woolf asked to speak directly with McCABE. Beltran informed Woolf that McCABE was in the process of suing the mortgage company in order to secure a smaller pay off amount. Beltran told Woolf that McCABE would meet with Woolf on April 5, 2013 to explain the matter.

On April 5, 2013, Woolf learned McCABE had disappeared with the escrow account money. The mortgage with North Star (Chase) was never paid in full. In furtherance of the bank fraud the McCabe & Samiljan firm did not adhere to the closing instructions required by Waterstone Mortgage Corporation. The McCabe & Samiljan firm claimed to have executed the following closing instructions: "Closing Agent to Complete and Sign First Lien Letter that is provided in Closing Package" and "Must deliver clear and merchantable title with priority lien position" and "All payoffs of debts must be supported by statements and invoices." Further, a First Lien/Title Clearance Letter dated November 13, 2012, was submitted to Waterstone Mortgage Corporation indicating "In connection with the property covered by the title commitment, we wish to advise you that we have closed and completely disbursed the above captioned

mortgage in the amount of $145,000. This mortgage is a valid first lien on the captioned property and all special assessments and taxes have been paid in full."

11. On or about October 2012, Joseph W. Woolf, hired the law firm of McCabe & Samiljan to act as the Settlement and Closing agent for the refinancing of his mortgage with JP Morgan Chase Bank N.A. Woolf borrowed approximately $164,616.69, from Waterstone Mortgage Corporation, in order to satisfy his outstanding debt of approximately $157,898.99, with Chase. A review of the September 2012 bank statement for the McCabe & Samiljan LLC., Suntrust Bank account titled City Title, LLC., account number: XXXXXXXXX9238, reflected a September 28, 2012 incoming wire transfer from Waterstone Mortgage Corporation in the amount of $164,616.69.

On or about September 28, 2012, a check was issued from the McCabe & Samiljan LLC., SunTrust Bank account titled City Title, LLC., number: XXXXXXXXX9238 payable to Chase in the amount of $157,898.99. The memo line listed "Payoff of the first mortgage loan – 4144."

On October 1, 2012, TIMOTHY McCABE diverted the $157,898.99 payment from the intended recipient Chase 3415 Vision Drive, Columbus, Ohio. McCABE by causing the deposit of the check into the McCabe & Samiljan LLC., IOTA Trust Account at TD Bank account number: XXX-XXX6358. McCABE then proceeded to utilize the diverted funds for purposes other than to pay off the Woolf mortgage. McCABE executed four transactions from the TD bank account XXX-XXX6358 utilizing the $157,898.99. On October 3, 2012, McCABE wrote two checks, one made payable to Wells Fargo Bank, N.A., for $111,709.38, and the other check was made payable to E.I. for $6,900.00. On

6

October 4, 2012, McCABE wrote two checks, one made payable to K.H. & S.H for $11,000 and the other check was made payable to R.B. for $5,000.

In furtherance of the bank fraud the McCabe & Samiljan firm did not adhere to the closing instructions required by Waterstone Mortgage Corporation. The McCabe & Samiljan firm claimed to have executed the following closing instructions: "Closing Agent to Complete and Sign First Lien Letter that is provided in Closing Package" and "Must deliver clear and merchantable title with priority lien position" and "All payoffs of debts must be supported by statements and invoices." Further, a First Lien/Title Clearance Letter dated September 28, 2012, was submitted to Waterstone Mortgage Corporation indicating "In connection with the property covered by the title commitment, we wish to advise you that we have closed and completely disbursed the above captioned mortgage in the amount of $167,000. This mortgage is a valid first lien on the captioned property and all special assessments and taxes have been paid in full."

12. On or about February 25, 2013, Robin E. Thompson entered into a real estate transaction to purchase property located at 1534 Windship Circle, Wellington, Florida, 33414. Thompson provided a deposit of $5,000, towards the purchase price of $204,000. Thompson applied for a $163,200.00 mortgage from Coldwell Banker Home Loans located at 1 Mortgage Way, Mount Laurel, New Jersey, 08054. The closing sale of the property occurred on March 25, 2013, and on that date Thompson's mortgage lender, Coldwell Banker Home Loans wired $162,357.53, for the purchase of the property to the McCabe & Samiljan LLC., Suntrust Bank account titled City Title, LLC., account number: XXXXXXXXX9238. A review of the March 2013 bank statement for the McCabe & Samiljan LLC., Suntrust Bank account titled City Title, LLC., account

number: XXXXXXXX9238, confirmed a March 25, 2013 incoming wire transfer in the amount of $162,357.53.

In furtherance of the bank fraud the McCabe & Samiljan firm did not adhere to the closing instructions required by Coldwell Banker Home Loans. The McCabe & Samiljan firm claimed to have executed the following closing instructions: "Coldwell Banker Home Loans must be first lien holder. All mortgage(s), judgments, and liens must be satisfied unless otherwise noted in our instructions." Another section of the closing instructions required the McCabe & Samiljan firm to: " Original mortgage/deed of trust must be sent to recorder's office immediately after closing."

As of May 30, 2013, the Palm Beach County Property Appraiser's Office does not recognize Thompson as the property owner of 1534 Windship Circle, Wellington, Florida. A review of the Palm Beach County Clerk and Comptroller's Office did not identify any transfer of deeds nor was a mortgage lien recorded for Thompson on the property located at 1534 Windship Circle, Wellington, Florida.

13.     During the latter part of 2012, Judith P. Bradley requested her longtime friend and attorney, TIMOTHY P. McCABE, to act as her title and closing agent on the refinancing of her residence. The residence, located at 6840 Eastview Drive Lantana, Florida, 33445, had a mortgage obligation with Bank of America for approximately $98,435.40. Bradley applied for a $102,700, mortgage with IBM SouthEast Employees' Federal Credit Union located at 1000 NW 17th Avenue Delray Beach, Florida, 33445, to refinance her home. On or about October 22, 2012, the closing for the refinancing of her home was conducted at McCABE's office. The closing instructions, as provided by IBM SouthEast Employees' Federal Credit Union, directed the closing agent (McCABE's

8

firm) to "payoff" the existing Bank of America mortgage of $98,435.40, so that IBM SouthEast Employees' Federal Credit Union would be in the first lien position on the property. The closing was executed by McCABE's paralegal Elizabeth Beltran. Beltran informed Bradley that McCABE planned to withhold the Bank of America "payoff" amount. Beltran explained that McCABE would work with Bank of America to secure a refund of interest monies already paid to Bank of America on the loan. Bradley did not understand how McCABE was to obtain a refund from Bank of America. Bradley trusted McCABE and did not question Beltran on McCABE's plan. During April 2013, Bradley received a telephone call from Bank of America advising that Bradley was late on her mortgage payments. Bradley contacted McCABE's office and learned McCABE had disappeared with the title company's funds and there was no money to pay off the Bank of America mortgage.

14.    During the summer of 2012, Zachary N. Pults applied for a $193,400 mortgage from Quicken Loans Inc. in order to refinance an existing mortgage of approximately $183,105 held by Seterus Inc. Since TIMOTHY P. McCABE had acted as the closing agent when Pults first purchased the residence in 2006, Pults decided to utilize McCABE's firm to conduct the closing on the refinance transaction.

During the process Pults dealt mostly with McCABE's paralegal, Elizabeth Beltran. Beltran was present and conducted the refinance closing. Approximately a week after the closing McCABE informed Pults that Seterus Inc. had committed some type of irregularity with the paperwork during the refinancing transaction. Based on the irregularity McCABE would be able to file a suit against Seterus Inc. McCABE told Pults a favorable judgment against Seterus Inc., could earn Pults a judgment of anywhere

from $10,000 to $25,000. McCABE told Pults he had approximately 40 similar cases. Pults had no reason to doubt McCABE and trusted him. McCABE had Pults execute a power of attorney. McCABE explained to Pults that McCABE's office would withhold the payoff amount of $183,105 provided by Quicken Loans to Seterus Inc. McCABE said he would continue to make the monthly mortgage payments to Seterus Inc., until the suit was settled. Pults understood if the court ruled against them in the law suit McCABE would satisfy the Seterus Inc. mortgage and there would be no repercussions. Pults began to pay the new monthly mortgage payments to Quicken Loans.

Pults called the McCABE firm once or twice a month to be updated on the progress of the Seterus Inc. law suit. Pults understood the Seterus Inc. mortgage was never settled because McCABE disappeared.

15. Old Republic National Title Insurance Company provided the title insurance for McCabe & Similjan. Old Republic took control of the real estate files located at the law firm and performed an audit to determine how much money was missing from escrow and had not been paid as directed in various closing instructions. As of April 11, 2013, auditors and lawyers employed by Old Republic estimated the total escrow fund losses at McCabe & Similjan to be in the range of seven to eight million dollars.

## CONCLUSION

16. Based upon the forgoing, I respectfully submit there is probable cause to believe TIMOTHY P. McCABE took actions that directly led to fraud by wire and fraud on a financial institution in violation of 18 U.S.C. §§ 1343 and 1344.

FURTHER YOUR AFFIANT SAYETH NAUGHT.


_____
JORGE A. RIVERA
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


SUBSCRIBED AND SWORN BEFORE ME

THIS __19__ DAY OF June 2013, AT

WEST PALM BEACH, FLORIDA.


_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: TIMOTHY P. McCABE**

**Case No**: 13-8307-DLB

Count #: 1

Fraud by Wire

18 USC §1343

**\* Max.Penalty**: 30 years imprisonment, up to $250,000 or twice the value of the loss which ever is greater, up to 5 years supervised release and a special assessment as to each count

Count #: 2

Fraud on a financial institution

18 USC §1344

**\*Max. Penalty** 30 years imprisonment, up to $250,000 or twice the value of the loss which ever is greater, up to 5 years supervised release and a special assessment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**